No. 3102

**Second Circuit**

(Second Division)

HILLMAN v. WETHERBEE

(April 9, 1931. Opinion and Decree.)

J. Fair Hardin, of Shreveport, attorney for plaintiff, appellant.

J. B. Files, of Shreveport, attorney for defendant, appellee.

CULPEPPER, J. This is a suit for compensation under the Louisiana Workmen's Compensation Act (Act No. 20 of 1914, as amended). From a judgment rejecting plaintiff's demands, plaintiff has appealed.

Plaintiff, at the time of his alleged injury on the night of July 12, 1926, was in the employment of defendant, engaged in drilling a well for defendant in the Tullos oil field, in La Salle parish. While so engaged, and in the course of his employment, a tong chain which he was using in the drilling operations broke, and a piece of the broken metal flew out and struck the left eye lens of plaintiff's eyeglasses which he was wearing at the time, resulting in shattering the glass. A number of small particles of glass were thrown into the left eye. One piece of glass became stuck in the cornea of the eye, just outside the pupillary area, but did not penetrate into the watery fluid. Other pieces of the glass lodged in between the eyelid and the ball of the eye. One piece became imbedded in the outside of the eyelid.

Plaintiff left his work and went immediately to Dr. Barbour, at Selma, La., arriving there about an hour after the accident.

Dr. Barbour testified that when plaintiff came to him his left eye was closed and bloodshot; that there were about a dozen small shattered pieces of glass located in between the eyeball and the lid. One piece was found sticking in the white part of the ball of the eye, but had not penetrated into the watery fluid. The lower lid of the eye showed to have a small laceration on the outer skin. Dr. Barbour states he removed the pieces of glass, bathed the eye with antiseptic solution, and placed a bandage over it. He says

plaintiff came back to his office for treatment each day thereafter for two days, and did not come any more.

Plaintiff testified that he returned to his same work immediately after receiving treatment on the night of the injury, and continued to work at the same job until some time during the latter part of that month or the first of August, when he was discharged by Mr. Sailes, the foreman of the work. He states that his eye continued to pain and irritate him until some time during the following February and he went to Dr. Woolworth in Shreveport for treatment. Plaintiff did not have his eye bandaged when he went to Dr. Woolworth. He says Dr. Woolworth operated on his eye, removing a small piece of glass, which relieved his pain, and that he did not suffer any more pain or irritation after that.

Dr. Woolworth was called as a witness for defendant, and testified that plaintiff first came to him the latter part of July or the first of August, 1926; that upon an examination he found plaintiff had a small cut on the cornea of the left eye, located on the outside of the pupillary area; that the eye was a little bit red, and that was about all he found, no glass was in the eye. The doctor further testified that plaintiff came back again the following February. On that occasion he says there showed to be a small scar on the cornea as a result of the cut place above mentioned, which had healed up, leaving no inflammation nor apparent irritation. Dr. Woolworth states he also found a small piece of glass imbedded on the outside part of the left eyelid. Being asked if he removed this piece of glass, Dr. Woolworth says:

"No, made an incision, tried to get it out, but decided it would do less harm than to gouge around to find the glass would do him, so I didn't do any extensive operation, just made an incision and tried to get it, but it was hard to get and just left it in there."

Dr. Woolworth states that the only way to detect the piece of glass was to feel it. He says it would not cost more than $25 to remove it, as it would take only a minor operation.

Plaintiff testified that the vision in his left eye was good before the accident occurred, but that it has since been poor. Dr. Woolworth testifies that the injury received by plaintiff could not possibly have caused any defect in vision of that eye. He is positive in his opinion, in that regard, that the injury did not affect the vision.

Plaintiff, as shown above, returned to his work immediately after receiving the first treatment from Dr. Barbour, doing the same kind of work he had been doing, and continued working until August 20th, at which time he was discharged. Since then he has done little work, but his failure to get work is not shown to have been due to disability resulting from the injuries received. He states that after Dr. Woolworth operated and removed the piece of glass from his eye, he was relieved from any further suffering. It will be noted, however, that Dr. Woolworth did not remove the piece of glass, as plaintiff thought was done; so, there is no more reason why plaintiff's eye should have pained him before February 17th, than afterward, other than his mere statement to that effect.

Plaintiff performed the same kind and character of work after the accident and injury as before. It cannot be said that his injuries were of such nature as to render him unable to do work of a reason-

able character at any time. He was neither totally nor temporarily disabled from doing work of a reasonable character. Neither has plaintiff shown that he suffered any defect in his eye or lowered vision as a result of the accident and injury. Under the law, it is incumbent upon plaintiff to make out his case by a preponderance of the testimony. This he has failed to do. The testimony also shows that plaintiff did not pay any of the expenses incidental to the treatment which he received, and is, of course, not entitled to recover for anything claimed by him on that account.

The judgment of the lower court is affirmed.